1

2

3

4

5

6

7

8

9

10

11           UNITED STATES DISTRICT COURT

12           CENTRAL DISTRICT OF CALIFORNIA

13

14  HOVEK BADEMYAN,                    )  CASE NO. CV 08-00519 MMM (RZx)
                                       )
15                  Plaintiff,         )
                                       )
16            vs.                      )  ORDER GRANTING DEFENDANT'S
                                       )  MOTION TO HOLD ARAKSI
17  THE RECEIVABLE MANAGEMENT          )  BADEMYAN IN CONTEMPT
    SERVICES CORPORATION d/b/a RMS,    )
18                                     )
                  Defendant.           )
19                                     )
                                       )
20  _____)

21

22          On February 11, 2009, the court granted defendant RMS's *ex parte* application for an order

23  setting a hearing on its motion to hold Araksi Bademyan ("Mrs. Bademyan") in contempt.[1]

24  _____

25          [1]See Order Setting Hearing on Defendant's Motion to Hold Araksi Bademyan in Contempt,
    to Compel Her to Appear at Her Deposition, and to Sanction Her; Directing Defendant to Serve
26  Araksi Bademyan Personally; Setting Deadlines for Opposition and Reply Briefs ("Order Setting
    Contempt Hearing"), Docket No. 91 (Feb. 11, 2009); see also Defendant's *Ex Parte* Application
27  for an Order Specially Setting a Hearing on Defendant's Motion to Find Araksi Bademyan in
    Contempt of Court, Compel Her to Appear at a Deposition on Three Days Notice, and Sanction
28

# I. FACTUAL & PROCEDURAL BACKGROUND

This case arises under the Fair Debt Collection Practices Act of 1978 ("FDCPA"), 15 U.S.C. § 1692 et seq., and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 et seq.  In his first amended complaint, plaintiff Hovek Bademyan ("Bademyan") alleges that RMS, a consumer debt collection corporation, engaged in abusive, deceptive, and unfair debt collection practices while attempting to secure payment of a credit card debt.[2]  Bademyan contends that, as a result of RMS's alleged unlawful debt collection activities, he has suffered emotional distress, including sleeplessness, loss of appetite, loss of weight, and loss of interest in life.  Specifically, during his deposition, Bademyan testified that RMS's collection efforts caused emotional distress, leading him to visit a doctor and obtain a prescription.[3]  Bademyan claimed that he could not remember the name of the doctor or the name of the prescribed medication, but stated that his mother, Mrs. Bademyan, could provide both pieces of information since she was the individual who had driven him to the doctor and picked up his medication from the pharmacy.[4]

RMS sought to depose Mrs. Bademyan to verify Bademyan's emotional distress claim.  Mrs. Bademyan was personally served with a deposition subpoena on November 10, 2008 and a notice to appear on November 21, 2008 at 10 a.m.[5]  Mrs. Bademyan was given $64 in witness

---

her in the Amount of $2212.65 ("RMS *Ex Parte* Appl."), Docket No. 88 (Jan. 28, 2009).

[2]See First Amended Complaint and Demand for Jury Trial (Unlawful Debt Collection Practices) ("Complaint"), Docket No. 16 (Mar. 12, 2008).

[3]RMS *Ex Parte* Appl., Attachment 2 (Declaration of Brian Slome in Support of *Ex Parte* Application ("Slome Decl.")), Exh. 3 ("Bademyan Depo. Excerpts") at 65.

[4]*Id.* at 65-66.

[5]Slome Decl., ¶ 6; *id.*, Exh. 4 (copy of the deposition subpoena and deposition notice).

1  fees when served.[6]  Nonetheless, she did not appear for her deposition on November 21.[7]

2       RMS subsequently filed an *ex parte* application for an order specially setting a hearing on

3  a motion to compel Mrs. Bademyan to appear for deposition.[8]  After granting the *ex parte*

4  application,[9] Magistrate Judge Ralph Zarefsky ordered Mrs. Bademyan to appear.[10]  RMS served

5  Mrs. Bademyan with a copy of Judge Zarefsky's order, a deposition subpoena, and a deposition

6  notice on January 15, 2009.[11]  The deposition was scheduled for January 22, 2009; once again,

7  Mrs. Bademyan did not appear.[12]  RMS then filed its *ex parte* application seeking an order

8  specially setting a hearing on its motion to hold Mrs. Bademyan in contempt.  As noted, the court

9  granted RMS's *ex parte* application,[13] and directed Mrs. Bademyan to file any opposition no later

10  than February 25, 2009.  Mrs. Bademyan has not opposed RMS's motion to hold her in contempt.

---

16
17  [6]RMS *Ex Parte* Appl., Attachment 1 (Defendant's Memorandum of Points and Authorities in Support of *Ex Parte* Application ("*Ex Parte* Memo.")) at 3.

18
19  [7]*Id.*; Slome Decl., Exh. 5 (Reporter's Declaration re: Failure of Witness to Appear for Deposition, November 21, 2008).

20
21  [8]See Defendant's *Ex Parte* Application for an Order Specially Setting a Hearing on a Motion to Compel Plaintiff's Mother Araksi Bademyan to Appear at her Deposition for December 29, 2008, Docket No. 56 (Dec. 11, 2008).

22
23  [9]See In Chambers Order, Docket No. 61 (Dec. 16, 2008).

24  [10]See HRG: Defendant's Motion to Compel, Docket No. 76 (Jan. 5, 2009).

25  [11]*Ex Parte* Memo. at 4; Slome Decl., Exh. 8 (copy of second deposition subpoena and deposition notice).

26
27  [12]*Ex Parte* Memo at 4; Slome Decl., Exh. 9 (Reporter's Declaration re: Failure of Witness to Appear for the Taking of Her Deposition, January 22, 2009).

28  [13]See Order Setting Contempt Hearing.

3

## II. DISCUSSION

### A.    Propriety of Civil Contempt Order

Courts have inherent power to enforce their orders through civil contempt.  See *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  A district court has wide latitude in determining whether there has been a contemptuous defiance of one of its orders.  *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), cert. denied, 506 U.S. 1081 (1993).  The Ninth Circuit's inquiry regarding contempt "has long been whether [contemnors] have performed 'all reasonable steps within their power to insure compliance' with the court's orders."  *Stone*, 968 F.2d at 856 (quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404 (9th Cir. 1976), cert. denied, 430 U.S. 931 (1977)).

Rule 45(e) of the Federal Rules of Civil Procedure provides that a "court may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena." Fed.R.Civ.Proc. 45(e).  "Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court."  *Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001) (citing Advisory Committee Notes to Rule 45(a) ("Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions")); *Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, *7 (E.D. Mich. Dec. 10, 2008) (same).

The party moving for contempt bears the burden of establishing by clear and convincing evidence that the contemnor has violated a specific and definite order of the court.  See *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997) ("For Wolfard to succeed in its motion for civil contempt, it had to show by clear and convincing evidence that Zodiac violated the consent judgment beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the judgment," citing *In re Dual-Deck Video Cassette Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993)); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989) ("As we have previously stated, civil contempt is appropriate when a party fails to comply with a specific and definite court order," citing *Gifford*

1    *v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)); *Vertex Distributing v. Falcon Foam Plastics,*

2    *Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) ("We apply well-settled law.  In a civil contempt

3    proceeding, the contempt must be proved by clear and convincing evidence.  *Battaglia v. United*

4    *States*, 653 F.2d 419, 422 (9th Cir. 1981); *United States v. Powers*, 629 F.2d 619, 626 n. 6 (9th

5    Cir. 1980).  This requires more than does the preponderance of the evidence standard applicable

6    in most civil cases.  *Battaglia*, 653 F.2d at 422; *Powers*, 629 F.2d at 626, n. 6. . .").

7          Once the moving party shows by clear and convincing evidence that the contemnor has

8    violated a specific and definite order of court, the burden shifts to the contemnor to demonstrate

9    that he or she took every reasonable step to comply, and to articulate reasons why compliance was

10   not possible.  See *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) ("To satisfy this

11   burden the individual appellants were required to show 'categorically and in detail' why they were

12   unable to comply with the court's previous order," quoting *United States v. Rylander*, 656 F.2d

13   1313, 1318 (9th Cir. 1981), rev'd on other grounds, 460 U.S. 752 (1983)), cert. denied, 464 U.S.

14   1040 (1984).  In assessing whether an alleged contemnor has taken "every reasonable step" to

15   comply with the terms of a court order, the district court can consider (1) a history of

16   noncompliance and (2) a failure to comply despite the pendency of a contempt motion.  See *Stone*,

17   968 F.2d at 857.  The contempt need not be willful, *Perry v. O'Donnell*, 759 F.2d 702, 704-06

18   (9th Cir. 1985), and a party's subjective intent is irrelevant.  See *McComb v. Jacksonville Paper*

19   *Co.*, 336 U.S. 187, 191 (1949); *Donovan*, 716 F.2d at 1240.  If, however, "a defendant's action

20   'appears to be based on a good faith and reasonable interpretation of (the court's order),' he

21   should not be held in contempt."  *Vertex Distributing*, 689 F.2d at 889 (quoting *Rinehart v.*

22   *Brewer*, 483 F.Supp. 165, 171 (S.D. Iowa 1980)).

23       **B.**    **Mrs. Bademyan Has Violated Judge Zarefsky's January 5, 2009 Order**

24                **Compelling Her to Appear for Deposition**

25         RMS has adduced clear and convincing evidence that Mrs. Bademyan did not appear for

26   her deposition scheduled on January 22, 2009.  Mrs. Bademyan has not asserted that she was

27   unable to comply with the January 5, 2009 order to appear for deposition, and the court must

28   conclude, based on the present record, that she has not taken all reasonable steps to comply with

1    the order.  Accordingly, the court concludes that Mrs. Bademyan is in contempt of the January

2    5, 2009 order, and that an order of contempt is properly entered.

3            **C.**     **The Appropriate Remedy**

4           Sanctions for civil contempt are imposed to coerce compliance with a court order, to

5    compensate the party pursuing contempt for injuries resulting from the contemptuous behavior,

6    or both.  *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947)

7    ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either

8    or both of two purposes[:] to coerce the [contemnor] into compliance with the court's order, and

9    to compensate the complainant for losses sustained" (citations omitted)); *Perry*, 759 F.2d at 705

10   ("[T]he purpose of civil contempt is remedial").

11          Whether contempt is civil or criminal turns "on the character and purpose of the sanction

12   involved." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911).  The character of

13   the relief is civil if the contemnor can avoid the sentence imposed, and purge himself of it, by

14   complying with the terms of the original order.  It is criminal if he may not.  See *Hicks on Behalf*

15   *of Feiock v. Feiock*, 485 U.S. 624, 632, 635 & n. 7 (1988).  Where the purpose of the contempt

16   order is to ensure a party's compliance, the court must "consider the character and magnitude of

17   the harm threatened by continued contumacy, and the probable effectiveness of any suggested

18   sanction in bringing about the result desired." *Mine Workers*, 330 U.S. at 304; see also *Whittaker*

19   *Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (quoting *Mine Workers* and citing

20   *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986), and *Shuffler v.*

21   *Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)).

22             **1.**     **The Character and Magnitude of the Harm Threatened**

23          Mrs. Bademyan's failure to appear for her January 22, 2009 deposition constitutes a

24   violation of both the letter and spirit of Judge Zarefsky's order compelling her to appear.  Given

25   Mrs. Bademyan's failure to appear at her first scheduled deposition on November 21, 2008, the

26   court does not believe the failure is isolated or that there is no danger of repetition.  Indeed, Mrs.

27   Bademyan's continued noncompliance with the January 5, 2009 order is strong evidence to the

28   contrary.  It suggests that Mrs. Bademyan intends not to comply and to attempt to impede RMS's

1    ability to determine whether Bademyan has, in fact, suffered any emotional distress.

2                  **2.      Probable Effectiveness of the Proposed Sanction**

3          RMS requests that the court compel Mrs. Bademyan to appear at her deposition.  The court

4    believes this is an appropriate remedy, and therefore directs Mrs. Bademyan to appear for her

5    deposition on **March 12, 2009**, in the jury room of Courtroom 540, located in the Roybal Federal

6    Building, 255 E. Temple St., Los Angeles, CA 90012.

7          RMS also requests that the court impose monetary sanctions in the amount of $2,212.65

8    to cover the attorneys' fees and costs it has incurred attempting to depose Mrs. Bademyan.[14]

9                 **a.      Whether RMS is Entitled to Fees**

10        The Ninth Circuit has held that a court may sanction a contemnor by ordering that she pay

11   a party's attorneys' fees and costs.  See *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539

12   F.3d 1039, 1042 (9th Cir. 2008) (holding that a court may sanction a contemnor for "attorney's

13   fees, lost royalties, and storage costs [that] were assessed in order to compensate the

14   [complainant] for losses sustained"); see also *Corrales v. Castillo*, No. 2:07-cv-00141-LRH-LRL,

15   2008 WL 4186233, *1 (D. Nev. Sept. 3, 2008) (sanctioning contemnor for "reasonable expenses,

16   including attorney's fees and costs" incurred in filing the contempt motion and reply, preparing

17   for and participating in the hearing on the motion, and conducting a contempt deposition); *Henry*

18   *Schein, Inc. v. Certified Business Supply Inc.*, No. SACV 03-1662 DOC (ANx), 2008 WL

19   4962851, *1 (C.D. Cal. Nov. 18, 2008) (recognizing that an award of reasonable attorneys' fees

20   and costs is an appropriate sanction to impose on a party held in civil contempt).

21        RMS has incurred time and expense bringing Mrs. Bademyan's failure to comply with the

22   January 5, 2009 order compelling her to appear for deposition to the court's attention.  Moreover,

23   it appears that Mrs. Bademyan has taken no affirmative steps to comply with the terms of the

24   order.  These are precisely the types of considerations that render an attorneys' fees award

25   appropriate.  See, e.g., *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 682 (9th Cir. 1986)

26   ("courts in civil contempt proceedings *must* award attorney's fees when such fees have actually

27

28        [14]Slome Decl., ¶ 9.

1    been incurred by the prevailing party and are otherwise allowable").

2                    **b.    Whether RMS's Requested Fee Award is Reasonable**

3          Once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains

4    for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424,

5    433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F. 2d 275, 278-79 (1st Cir. 1978)).   The Ninth

6    Circuit "requires a district court to calculate an award of attorneys' fees by first calculating the

7    'lodestar.'" *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (citing *Morales*

8    *v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (reversing the district court's award of

9    attorney's fees because it failed to calculate a lodestar figure and assess the extent to which

10   recognized bases for adjusting that figure applied)).   "The 'lodestar' is calculated by multiplying

11   the number of hours the prevailing party reasonably expended on the litigation by a reasonable

12   hourly rate." *Morales*, 96 F.3d at 363.   It incorporates consideration of the results obtained, as

13   required by *Hensley*, 461 U.S. 424, and other relevant factors as well. *Morales*, 96 F.3d at 363

14   n. 8.

15         To calculate the lodestar figure, a plaintiff must submit "satisfactory evidence . . . that the

16   requested rates are in line with those prevailing in the community for similar services by lawyers

17   of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886,

18   895-96 n. 11 (1984).   The relevant community is that in which the district court sits.   See

19   *Schwartz v. Secretary of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

20   Declarations regarding the prevailing market rate in the relevant community suffice to establish

21   a reasonable hourly rate.   See *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998).

22         In support of its motion, RMS has submitted declaration from Brian Slome, one of its

23   lawyers for this matter.   It has not, however, provided the court with any declarations from

24   lawyers not associated with this case.   See, e.g., *Benson v. Continental Casualty Company*, 592

25   F.Supp.2d 1274, 1279 (C.D. Cal. 2009) ("As for the attorneys['] fees, Plaintiff submits not only

26   a declaration by each lawyer about their experience and rates *but also affidavits of other attorneys*

27   *setting forth their customary rates*, all of which support a finding that these rates are reasonable.

28   See, e.g., *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.

1   1990) ("Affidavits of the plaintiffs' attorney *and other attorneys* regarding prevailing fees in the

2   community, and rate determinations in other cases, particularly those setting a rate for the

3   plaintiffs' attorney, are satisfactory evidence of the prevailing market rate")" (emphases added)).

4   When a fee applicant fails to meet its burden of establishing the reasonableness of the requested

5   rates, however, the court may exercise its discretion to determine reasonable hourly rates based

6   on its experience and knowledge of prevailing rates in the community. See, e.g., *Plan*

7   *Administrator v. Kienast*, No. 2:06-cv-1529, 2008 WL 1981637, *4 (W.D. Pa. May 2, 2008) ("If

8   a party fails to meet its burden to demonstrate a prima facie case that the requested rates were the

9   prevailing rates in the community, 'the district court must exercise its discretion in fixing a

10  reasonable hourly rate,'" quoting *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d

11  1031, 1036 (3d Cir. 1996)); *Moreno v. Empire City Subway Co.*, No. CV 05-7768 (LMM)

12  (HBP), 2008 WL 793605, *7 (S.D.N.Y. Mar. 26, 2008) (where the fee applicant "has submitted

13  no evidence of the prevailing market rate for attorneys of like skill litigating cases similar to

14  plaintiff's . . . it is within [the court's] discretion to determine the reasonable hourly rate at which

15  plaintiff['] s counsel should be compensated based on [the court's] familiarity with plaintiff's case

16  and the prevailing rates in the [relevant community]"); *Shephard v. Dorsa*, No. CV 95-8748 ER

17  (JGx), 1998 WL 1799018, *2 (C.D. Cal. July 2, 1998) (determining a reasonable hourly rate

18  based on "(1) the Court's own experience in considering the prevailing market rates in Los

19  Angeles, (2) other fee awards in the relevant market, and (3) ALTMAN WEIL, PENSA, SURVEY OF

20  LAW FIRM ECONOMICS (1996)" in a case where the fee applicant failed to establish the

21  reasonableness of the lawyer's hourly rate).   In this case, the court elects to evaluate whether

22  RMS's requested hourly rates are reasonable based on its experience with similar cases and its

23  knowledge of prevailing rates in the community.

24         Counsel for RMS represent that the associates who worked on the original and subsequent

25  motions to compel Mrs. Bademyan's appearance at deposition billed their time at $175.00 per

26  hour, and that the hourly rate of the senior partner who was to conduct the second scheduled

27  deposition of Mrs. Bademyan was $235.00 per hour.   The court concludes that these rates are

28  reasonable – indeed quite low – based on its familiarity with prevailing market rates in the Central

1    District of California, and its experience determining reasonable hourly rates in other cases.

2         A court may award attorneys' fees only for the number of hours it concludes were
3    reasonably expended litigating the case.  At the outset, "[t]he fee applicant bears the burden of
4    documenting the appropriate hours expended in litigation and must submit evidence in support of
5    those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).  "'The party
6    opposing the fee application has a burden of rebuttal that requires submission of evidence to the
7    district court challenging the accuracy and reasonableness of the hours charged or the facts
8    asserted by the prevailing party in submitted affidavits.'" *Common Cause v. Jones*, 235 F.Supp.2d
9    1076, 1079 (C.D. Cal. 2002) (quoting *Deukmejian*, 987 F.2d at 1397 (citing *Blum*, 465 U.S. at
10   892 n. 5 and *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987)).  RMS seeks
11   reimbursement for a total of 11.8 hours that were expended preparing for and attending Mrs.
12   Bademyan's first and second noticed depositions, as well as preparing the motions to compel
13   necessitated by Mrs. Bademyan's repeat nonappearance.

14        Although neither Bademyan nor his mother has contested the reasonableness of the hours,
15   the court has an independent obligation to review them and determine if they are reasonable in
16   light of the work performed.  See *Common Cause*, 235 F.Supp.2d at 1079 (even where a
17   defendant has not rebutted the reasonableness of the hours billed, the court "may not uncritically
18   accept a fee request," citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th
19   Cir.1984)).  Having carefully reviewed the documents submitted, the court concludes that the
20   hours expended are reasonable.

21

22                                    **III.  CONCLUSION**

23        For the foregoing reasons, the court finds that Mrs. Bademyan is in contempt of Judge
24   Zarefsky's January 5, 2009 order compelling her to appear for deposition.  The court imposes
25   sanctions on Mrs. Bademyan of $2,212.65, representing the attorneys' fees and costs RMS
26   reasonably incurred attempting to depose her.  The sanctions are calculated as follows:

27

28

                                            10

| Associate at $175/hour | 11.3 hours | $1,977.50 |
|---|---|---|
| Senior Partner at $235/hour | 0.5 hours | $117.50 |
| Reporter's Appearance 1 | | $46.65 |
| Reporter's Appearance 2 | | $71.00 |
| **GRAND TOTAL** | | **$2,212.65** |

The court further orders Mrs. Bademyan to appear for her deposition on **March 12, 2009** in the jury room of Courtroom 540, located in the Roybal Federal Building, 255 E. Temple St., Los Angeles, CA 90012.  If she does not, RMS may seek additional sanctions, including a daily fine and/or coercive incarceration.  RMS is directed to serve a copy of this order upon Mrs. Bademyan immediately and to file proof of service with the court no later than March 10, 2009.


DATED: March 9, 2009

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

11